Case 4:22-cv-03946   Document 21   Filed on 08/15/25 in TXSD   Page 1 of 5

United States District Court
Southern District of Texas
**ENTERED**
August 19, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BELT TECH, INC., § | |
| § | |
| *Plaintiff*, § | |
| VS. § | CIVIL ACTION NO. 4:22-cv-3946 |
| § | |
| GI BROTHERS TRUCKING, INC. and § | |
| JOHN DOE, § | |
| § | |
| *Defendants*. § | |

## ORDER

In this Carmack Amendment case, the Court granted Belt Tech, Inc.'s ("Plaintiff") Motion for Entry of Default Judgment, (Doc. No. 12), and held a hearing to determine the damages Plaintiff is entitled to recover from GI Brothers Trucking, Inc. ("GI Brothers") and John Doe ("Doe," together, with GI Brothers, "Defendants"), (Doc. No. 17). During the hearing, the Court requested additional briefing from Plaintiff regarding attorney's fees and consequential damages under the Carmack Amendment. Plaintiff obliged. (Doc. No. 20). Having considered Plaintiff's brief, the record, and the applicable law, the Court **AWARDS $69,500** in general damages.

### I.  Background

This is a Carmack Amendment case. Plaintiff alleges that it was hired to furnish all necessary materials, labor, supervision, and equipment to replace a damaged conveyor belt at a power station in Red Rock, Oklahoma (the "Sooner Station") owned by Wolf Point Engineers Company/OG&E Power Station ("Wolf Point"). (Doc. No. 1 at 3–4). This project was only the first phase of a two-part project, and while Wolf Point had received an estimate on the second phase, it had not yet executed the purchase order on the second phase. In addition to this second

phase of that project, Wolf Point was also in talks with Belt Tech to work on an entirely different project.

To fulfill the purchase order on the first phase of the first project, Plaintiff purchased four conveyor belt rolls, which were shipped from India to the Port of Houston. (Doc. No. 1 at 4). Plaintiff also engaged a broker who in turn engaged GI Brothers to serve as the motor carrier and to transport the rolls from the Port of Houston to Red Rock. (*Id.*). Doe was the driver. (*Id.* at 5). When Defendants picked up the rolls, Plaintiff alleges, they were "in good order and condition and suitable." (*Id.* at 4).

At the station, Doe was met by a station employee who led Doe through the gate to a specific delivery location. (*Id.* at 5). While being directed by that station employee, Doe came across a "large, metal conveyor frame stretching across the road at a lower clearance and posted with 'Caution Clearance' signs." (*Id.*). Seeing that Doe's truck was too tall to fit under the obstruction, the station employee stopped Doe's truck and left the scene briefly to get a forklift, which would then unload the rolls from the trailer and carry it to the final delivery point. (*Id.*).

Despite the low clearance warnings and the employee's instruction to stop, Doe attempted to drive his truck carrying the rolls under the metal conveyor. (*Id.*). The top of one of the rolls struck the metal conveyor. (*Id.*). Undeterred, Doe reversed his vehicle and attempted again to drive under the metal conveyor, hitting it once more with one of the rolls. (*Id.*). The two unfortunate attempts severely damaged one of the rolls, and Wolf Point refused to pay for the damaged roll but accepted others. (*Id.*). Further, Wolf Point decided to not hire Plaintiff for subsequent projects. (*Id.*).

To recover for damages allegedly caused by Defendants, Plaintiff brought this suit against Doe and his employer, GI Brothers. Plaintiff's principal claim is one under the Carmack

that issue, the Court requested further briefing from Plaintiff on the availability of consequential damages and attorney's fees under the Carmack Amendment.

Plaintiff subsequently filed a Memorandum in Support of Default Judgment Damages. In it, Plaintiff conceded that it is not entitled to attorney's fees and withdrew that request. (Doc. No. 20 at 2). Moreover, Plaintiff modified its requested damages amount. It now seeks $69,500 in damages directly arising from the damaged roll.[1] (Doc. No. 20 at 6–7). As to lost profits, Plaintiff conceded that "future, contemplated contracts are too speculative for the [C]ourt to award damages for." (*Id.* at 3). As such, Plaintiff now only seeks the lost profits for the second phase of the existing project, $105,437.35. These requests are supported by a sworn affidavit of Mr. Hamm.

## II.     Analysis

"The liability imposed under [the Carmack Amendment] is for the actual loss or injury to the property caused by . . . the delivering carrier." 49 U.S.C. § 14706(a)(1). The Fifth Circuit has interpreted that statute as "includ[ing] all reasonably foreseeable damages resulting from the breach of [a carrier's] brief of its contract of carriage." *Nat'l Hispanic Circus, Inc. v. Rex Trucking, Inc.*, 414 F.3d 546, 549 (5th Cir. 2005). That is, "[b]oth general and specific damages may be recovered under the Carmack Amendment." *Id.* "General damages are those that are foreseeable at the time of contracting." *Id.* "Special damages are those that result from a party's breach of contract [of carriage] but are not reasonably foreseeable." *Id.* Special damages, however, are "generally not recoverable . . . absent actual notice to the defendant of special circumstances from which such damages might arise." *Id.*

---

[1] The precise breakdown of the requested damages is as follows: $32,000 for the cost of a new, replacement roll; $10,000 for the cost of expediated shipping; $17,000 for the cost of temporary repair; $7,000 for "[d]elay costs related to the applicable project"; and $3,5000 for the internal costs for administration and project management. (Doc. No. 20-1 at 2).

4

Amendment. (*Id.* at 6). In the alternative to the Carmack claim, Plaintiff brings a breach-of-contract claim, (*id.* at 7), negligence claim, (*id.* at 9), negligent-entrustment claim, (*id.* at 10), and negligent hiring claim. (*id.*). Moreover, alternatively to both its Carmack claim and breach-of-contract claim, Plaintiff brings a promissory estoppel claim. (*Id.* at 8).

Defendants failed to make any appearance in the case despite proper service of process. Accordingly, Plaintiff moved for a default judgment against them, and this Court granted it. (Doc. Nos. 10, 12). Further, at Plaintiff's request, the Court held a hearing on the amount of damages to be recovered by Plaintiff. (Doc. Nos. 13, 17).

At the hearing, Plaintiff's President, Mr. Justin Hamm, testified. While the Complaint originally sought $125,000 in damages arising directly from the damaged roll and lost profits of $500,000, (Doc. No. 1 at 11), Mr. Hamm testified that the former actually totals up to $101,500, which includes the cost of replacing the belt, the logistics of re-delivering the replacement belt, and any temporary measure while the re-delivery was pending. He further testified that the lost profits equaled $500,000. He arrived at this number by adding the projected profits from two downstream projects Plaintiff was to perform for Wolf Point—the second phase of the same project and an entirely different project. According to Mr. Hamm, the second phase would have yielded $200,000 in profits to Plaintiff, while the second project was projected to be more profitable, yielding approximately $300,000 in profits. Notably, Mr. Hamm testified that Defendants would not have known about any future phases or projects Plaintiff and Wolf Point discussed or contemplated.

Plaintiff's counsel also requested attorney's fees under the breach-of-contract claim. The Court, however, asked whether that claim was preempted by the Carmack Amendment. To resolve

3

### A. General Damages

The Court finds that the $69,500 in costs incurred by Plaintiff in replacing and shipping and arranging for replacing and shipping the rolls, and for any temporary repairs in the meantime, were reasonably foreseeable at the time Defendants contracted with Plaintiff to transport the rolls. It is entirely foreseeable that if a shipped good is damaged, it must be replaced and re-shipped and temporary measures must be put in place. The Court thus grants $69,500 in general damages.

### B. Special Damages

As to the remaining $105,437.35, Plaintiff has not demonstrated that such damages were foreseeable to Defendants or that they had actual notice. Nothing in the Complaint, Mr. Hamm's live testimony, or his affidavit suggests that Defendants could foresee that there was a second phase of the project down the pipeline. Similarly, nothing suggests that Defendants were given actual notice of the second phase. Indeed, Mr. Hamm testified that Defendants did not know of the prospect of any other projects for Wolf Point. Thus, the Court rejects Plaintiff's request for $105,437.35 in special damages.

### III. Conclusion

For the foregoing reasons, the Court awards $69,500 in general damages. Final judgment will be entered separately.

It is so ordered.

Signed on this the _15_ day of August, 2025.

Andrew S. Hanen
United States District Judge